DANIEL E. PARK, State Bar No. 174524
dpark@parkllp.law
WIL J. RIOS, State Bar No. 342653
wil@parkllp.law
JASON H. WOLTMAN, State Bar No. 314122
jason@parkllp.law
**PARK LLP**
9701 Wilshire Boulevard 10th Floor
Beverly Hills, California 90212
Telephone: (213) 616-7438
Facsimile: (818) 484-3325

**Attorneys for Plaintiff**
DAVID PARK, DDS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| DAVID PARK, DDS, an individual, <br><br><br> Plaintiffs, <br><br> vs. <br><br> NELSON YU, an individual; PAMELA SEBESTYEN aka PAMELA YU, an individual; RANDALL W. YU, an individual; YESEUL KIM, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br> 1. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(c) <br> 2. RICO CONSPIRACY, 18 U.S.C. § 1962(d) <br> 3. INTENTIONAL FRAUD AND DECEIT (Cal. Civ. Code §§ 1709–1710) <br> 4. PROMISSORY FRAUD <br> 5. CIVIL CONSPIRACY TO DEFRAUD <br> 6. AIDING AND ABETTING FRAUD <br> 7. UNJUST ENRICHMENT <br> 8. CONVERSION <br> 9. VIOLATION OF CALIFORNIA PENAL CODE § 496 <br> 10. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 <br> 11. BREACH OF CONTRACT <br> 12. MONEY LENT <br><br> **DEMAND FOR JURY TRIAL** |

- 1 -
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This action arises from a brazen, sustained, and sophisticated scheme by Defendant Nelson Yu and his co-conspirators to defraud Plaintiff Dr. David Park, DDS of more than $1.3 million in loan proceeds. Over the course of several months in late 2025 and into 2026, Nelson Yu and his confederates fabricated and transmitted at least nine (9) fraudulent wire transfer confirmations and counterfeit bank checks — each designed to induce Dr. Park to refrain from legal action while Nelson Yu retained every dollar loaned to him and made zero payments in return.

2. This was not a simple failure to repay a debt. Nelson Yu operated a calculated and escalating scheme of deception, enlisting his wife Pamela Sebestyen, his brother Randall W. Yu, his father, and banking employees at BMO and Meridian Credit Union to create and deliver facially authentic looking, but actually fraudulent, banking documents. They developed false wire confirmations bearing official bank logos, professional formatting, serial numbers, forged authorization codes, counterfeit checks bearing joint account holder names — all transmitted via interstate and international wire communications to Dr. Park in Los Angeles, California.

3. Concurrent with the transmission of fraudulent documents, Nelson Yu transmitted repeated voice messages and electronic communications falsely representing that funds had cleared, that transmission issues were being resolved, and that wires were being "rerouted". These were all fabricated statements designed to prevent Dr. Park from taking legal action. Despite having access to over $17.6 million in his Edward Jones investment account — more than sufficient to satisfy the entire debt — Nelson Yu chose to defraud Plaintiff rather than repay.

4. This pattern of wire fraud, executed through multiple predicate acts across multiple financial institutions, multiple co-conspirators, and multiple countries, constitutes racketeering activity within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and subjects all Defendants to treble damages and mandatory attorney's fees.

5. Dr. Park brings this action to recover all sums owed, together with treble damages under RICO, prejudgment interest, punitive damages, and all other relief to which he is entitled.

## PARTIES

6. Plaintiff DAVID PARK, DDS ("Dr. Park" or "Plaintiff") is an individual residing and

**COMPLAINT AND DEMAND FOR JURY TRIAL**

conducting business in Los Angeles County, California.

7. Defendant NELSON YU ("Nelson Yu") is an individual who, on information and belief, resides at 1610-5 Northtown Way, Toronto, ON M2N 7A1, Canada. As alleged herein, Nelson Yu directed, orchestrated, and executed the fraudulent scheme targeting Dr. Park in California.

8. Defendant PAMELA SEBESTYEN, also known as PAMELA YU ("Sebestyen"), is an individual who, on information and belief, is the wife of Nelson Yu and resides in Toronto, Ontario, Canada. As alleged herein, Sebestyen participated in and furthered the fraudulent scheme targeting Dr. Park in California.

9. Defendant RANDALL W. YU ("Randall Yu") is an individual who, on information and belief, is the brother of Nelson Yu and resides in Canada. As alleged herein, Randall Yu actively participated in the fraudulent scheme targeting Dr. Park in California.

10. Defendant YESEUL KIM ("Kim") is an individual who, on information and belief, is employed as a Personal Banking Associate at BMO Bank of Montreal, Yonge & Tolman Branch, 5522 Yonge Street, Toronto, Ontario M2N 7L3, and resides in Toronto, Ontario, Canada. As alleged herein, Kim participated in and furthered the fraudulent scheme targeting Dr. Park in California.

11. Defendant DOE 1 (Nelson Yu's father), true name currently unknown, is an individual who, on information and belief, resides in Canada. As alleged herein, DOE 1 participated in the fraudulent scheme targeting Dr. Park in California. Plaintiff will substitute DOE 1 into this Complaint to allege his true name when ascertained through discovery.

12. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 2 through 100, inclusive, and therefore sues them by fictitious names. Does 2 through 100 include, without limitation, banking employees at BMO and Meridian Credit Union who participated in the creation and transmission of fraudulent documents in furtherance of the scheme. Plaintiff will amend this Complaint to allege their true names when ascertained through discovery.

13. Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, each Defendant was the agent, employee, co-conspirator, alter ego, or joint venturer of each of the other Defendants, and was at all times acting within the course and scope of such relationship with the knowledge and consent of the remaining Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over Plaintiff's federal RICO claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 18 U.S.C. § 1964(c).

15. This Court independently has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) (diversity jurisdiction). Plaintiff Dr. Park is a citizen of California. Defendants Nelson Yu, Pamela Sebestyen, Randall W. Yu, Yesuel Kim, and DOE 1 (Nelson Yu's father) are all citizens of Canada, a foreign state. The amount in controversy exceeds $75,000, exclusive of interest and costs.

16. This Court has supplemental jurisdiction over Plaintiff's California state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

17. This Court has personal jurisdiction over all Defendants. The loans at issue were originated in California; the fraudulent wire confirmations, counterfeit checks, and false electronic and voice communications were transmitted to and received by Dr. Park in Los Angeles, California; and substantial communications underlying the scheme were directed to and received in California. Defendants purposefully directed their fraudulent conduct toward California and caused injury to a California resident in California, establishing minimum contacts with this forum sufficient to satisfy due process.

18. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action — including the receipt of all fraudulent wire confirmations, the receipt of the counterfeit checks, and the entirety of the injury suffered by Plaintiff — occurred in this District.

**FACTUAL ALLEGATIONS**

**(Background — The Parties' Relationship and the Loans)**

19. Beginning in approximately April 2025, Defendant Nelson Yu solicited and received a series of loans from Dr. Park, representing that he would repay all sums with interest and holding himself out as a creditworthy borrower with substantial assets, including an Edward Jones investment account valued at over $17.6 million. In reasonable reliance on Nelson Yu's representations, Dr. Park loaned Nelson Yu a total of $1, 255,010.00, structured as follows: (a)

**COMPLAINT AND DEMAND FOR JURY TRIAL**

$600,000.00 in wire transfers disbursed in tranches — a first wire of $200,000.00 in approximately April or May 2025; a second wire of $200,000.00 in approximately June 2025, which, at Nelson Yu's explicit direction, Dr. Park transmitted directly to Nelson Yu's cousin and associate, Christian Nguyen, in Orange County, California; and a third wire of $200,000.00 in approximately late June 2025; (b) $600,000.00 in the form of five written instruments styled as "Giannis NT RPAs" (bills of sale), executed in approximately April or May 2025; and (c) an additional $55, 010.00 in subsequent wire transfers in approximately August 2025.

20. Despite having access to over $17.6 million in his Edward Jones investment account — more than sufficient to satisfy the entire debt many times over — Nelson Yu made no payments whatsoever on the outstanding loans. His failure to pay was not the product of financial inability. It was a deliberate choice made in furtherance of the scheme described herein.

21. Rather than repay Dr. Park, Nelson Yu, acting in concert with his co-conspirators, executed a systematic and escalating scheme to deceive Dr. Park through the fabrication and interstate and international wire transmission of fraudulent banking documents, each transmitted to Dr. Park in Los Angeles, California.

22. On or around November 17, 2025, Nelson Yu transmitted to Dr. Park a fraudulent BMO wire transfer confirmation bearing Serial No. 298461375, purporting to evidence a wire transfer of $600,000.00. No such wire was ever sent and no funds were received.

23. On or around November 21, 2025, Nelson Yu transmitted to Dr. Park two additional fraudulent BMO wire transfer confirmations — the first bearing Serial No. 298475263, purporting to evidence a wire transfer of $653,000.00, and the second bearing Serial No. 298485314, purporting to evidence a separate wire transfer of $600,000.00. Neither wire was ever sent and no funds were received.

24. On or around November 25, 2025, Nelson Yu transmitted to Dr. Park a fraudulent TD Bank wire transfer confirmation bearing Serial No. 376364395, purporting to evidence a wire transfer of $55,000.00. No such wire was ever sent and no funds were received. On November 26, 2025 — the day following the transmission of the fraudulent TD Bank wire confirmation — Nelson Yu sent an email to his BMO banker Yeseul Kim at his email, copying Dr. Park,  inquiring as to why his purported wire transfer was taking so long to clear. This communication, transmitted by

**COMPLAINT AND DEMAND FOR JURY TRIAL**

interstate and international electronic wire while multiple fraudulent wire confirmations had already been delivered to Dr. Park, was designed to create the false appearance of legitimate banking coordination on Dr. Park's behalf.

25.  On or around December 1, 2025, Nelson Yu transmitted to Dr. Park two counterfeit BMO bank checks — Check No. 332 in the amount of $653,000.00 and Check No. 333 in the amount of $600,000.00. Both checks bore a forged bank authorization reading "AUTH BY Y KIM" and listed Nelson Yu and Pamela J. Sebestyen as joint account holders. Both checks were entirely fabricated, were never honored, and no funds were received.

26.  On December 3, 2025 — two days after transmitting the counterfeit BMO checks — Nelson Yu sent Dr. Park an email with the subject line "Promissory note," expressly acknowledging the outstanding debt in the denominations of $653,000.00, $600,000.00, and $55,010.00, and promising to deliver bank drafts in those amounts "by end of business this week." No bank drafts were delivered by the end of the week.

27.  On or around December 16, 2025, Defendant Randall W. Yu, acting in knowing furtherance of the scheme, personally fabricated and transmitted to Dr. Park a fraudulent BMO wire transfer confirmation bearing Serial No. 298672687, in his own name, purporting to evidence a wire transfer of $200,000.00. No such wire was ever sent and no funds were received.

28. On or around January 7, 2026, Nelson Yu transmitted to Dr. Park a fraudulent Meridian Credit Union wire transfer request form bearing Reference No. 376150627, purporting to evidence an authorized and pending wire transfer of $910,000.00. No such wire was ever sent and no funds were received.

29. Each of the fraudulent instruments described above bore official bank logos, professional formatting, serial numbers, account numbers, routing information, and purported authorization codes — all designed to deceive Dr. Park into believing that transfers were being processed when no such transfers ever occurred. Concurrent with and between each of these transmissions, Nelson Yu sent Dr. Park repeated voice messages and electronic communications falsely representing that his BMO banker had confirmed funds had cleared and were en route, that transmission issues were being resolved, and that wires were being "rerouted."

- 6 -
**COMPLAINT AND DEMAND FOR JURY TRIAL**

30. Throughout this same period, Nelson Yu engaged in a months-long pattern of false assurances and manufactured excuses to prevent Dr. Park from taking legal action. On December 23, 2025, Nelson Yu transmitted an email to Dr. Park stating: "As per our phone conversation, I intend to meet you in Las Vegas on Dec 30th and 31st, with bank drafts in hand. Please hold off on any legal proceedings to any of the parties discussed." This email — expressly conditioning a promised payment on Dr. Park's suspension of legal action — demonstrates that the suppression of litigation was a central, explicit purpose of the scheme. To lend false credibility to this promise, Nelson Yu purchased an airline ticket for the Las Vegas trip. On December 30, 2025, the date of travel, Nelson Yu contacted Dr. Park claiming his flight was delayed and that he had missed his connecting flight. The following day, he claimed that TSA had sent him back to Canada. He never appeared in Las Vegas, no bank drafts were tendered, and no funds were received.

31. On January 1, 2026, Nelson Yu sent Dr. Park an email acknowledging the outstanding debt and proposing three repayment alternatives: (1) hand-delivery of bank drafts in denominations of $653,000.00, $600,000.00, and $55,010.00, with Nelson Yu flying to Los Angeles or Dr. Park flying to Toronto on January 7 or 8; (2) creation of an escrow account at BMO or TD Bank; or (3) placement of a "lien on my divorce" as a long-term resolution. In his reply, Dr. Park noted that the six or seven prior wire transfers Nelson Yu had purportedly sent had never appeared in his account — directly contradicting Nelson Yu's repeated representations that funds were clearing and en route. No alternative was executed and no funds were received. When Dr. Park offered to fly to Toronto to facilitate the exchange of bank drafts, Nelson Yu refused, insisting the obligation was his to fulfill, and proposed instead to fly to Los Angeles on or around January 8, 2026 to complete the transfer in person at a BMO branch. No such meeting ever materialized.

32. By on or around January 21, 2026, Nelson Yu was still representing to Dr. Park that he was "just waiting on available funds from one family member" and would "keep you apprised."

33. On or around January 28, 2026, Nelson Yu invoked his grandmother's funeral as a reason for further delay and requested additional time to pay. Dr. Park continued to extend professional courtesies and refrained from filing suit.

34. On or around January 30, 2026, Nelson Yu texted Dr. Park: "if you can give me until midweek next week, I'll have something significant to send your way." No payment was made.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

35. Nelson Yu further represented to Dr. Park that he was "hoping to borrow from [his] brother or da[d] and just settle [his] debt," enlisting references to Randall Yu and DOE 1 to lend false credibility to his promises. He also raised his pending divorce — representing that funds would be available at the end of summer "when my divorce is finalized / Early September" — as yet another manufactured timeline for repayment.

36. Ultimately, after months of broken promises and fabricated banking documents, Nelson Yu expressly repudiated any intention to repay, texting Dr. Park: "Wire won't be sent, do what you have to on your end."

37. On February 11, 2026, Dr. Park, through his counsel Park LLP, transmitted a formal written demand to Nelson Yu via electronic mail at nelson@outlook.com, demanding an initial payment of $9,083.00 by February 16, 2026 as a first installment, and setting forth the full scope of civil and criminal exposure facing Nelson Yu and his co-conspirators. Nelson Yu acknowledged receipt of the demand letter on February 13, 2026 but made no payment by the deadline. Park LLP thereafter issued multiple extensions upon Nelson Yu's representations that payment was forthcoming. Each extension was met with further delay and no payment.

38. On or around March 23, 2026, Nelson Yu promised a $50,000.00 "good faith" wire by March 31, 2026, and requested that Dr. Park refrain from filing suit. No wire was received. Nelson Yu then promised a wire by April 7, 2026. No wire was received.

## FIRST CAUSE OF ACTION

### Violation of RICO — 18 U.S.C. § 1962(c)

### (Against All Defendants)

39. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

40. **The Enterprise.** At all times relevant hereto, Defendants Nelson Yu, Pamela Sebestyen, Randall W. Yu, DOE 1 (Nelson Yu's father), and Does 2 through 100 constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4) — an association-in-fact enterprise formed and operated for the common purpose of defrauding Dr. Park through the fabrication and electronic transmission of fraudulent wire transfer confirmations and counterfeit banking instruments, and through a coordinated pattern of false assurances and manufactured excuses, thereby inducing Dr. Park to

**COMPLAINT AND DEMAND FOR JURY TRIAL**

refrain from legal action while Defendants retained his loan proceeds. The enterprise had the following structure and characteristics:

a.   **Common Purpose:** To defraud Dr. Park of no less than $1,255,010.00 in loan proceeds by manufacturing false evidence of repayment across multiple financial institutions and forestalling legal action through sustained deception.

b.   **Organizational Structure:** Nelson Yu served as orchestrator and primary actor, personally directing and transmitting the fraudulent banking documents and false communications; Pamela Sebestyen served as a knowing and active participant in the conduct of the enterprise's affairs by affirmatively making her name and joint account status available as an instrument of the fraud — knowingly authorizing her appearance as joint account holder on counterfeit BMO Check Nos. 332 and 333 with full knowledge that those instruments were fabricated and being transmitted to Dr. Park as part of the scheme. Her participation was not passive: her name's appearance on the counterfeit checks was essential to the enterprise's ability to manufacture facially legitimate banking instruments, and she took affirmative steps to facilitate the scheme with knowledge of its fraudulent purpose, thereby conducting the enterprise's affairs within the meaning of 18 U.S.C. § 1962(c); ; Randall W. Yu served as a secondary actor, personally transmitting an independent fraudulent wire confirmation in his own name; DOE 1 participated as a co-conspirator; and banking employees including Defendant Yeseul Kim at BMO and an unnamed employee at Meridian Credit Union created and authorized fraudulent banking documents bearing official logos, serial numbers, and forged authorization codes used in the scheme.

c.   **Longevity and Continuity:** The enterprise operated continuously from at least November 2025 through April 2026 — a period of approximately six months — with predicate acts committed across multiple financial institutions (BMO, TD Bank, Meridian Credit Union) and across international borders between Canada and the United States.

41. Each Defendant was employed by or associated with the enterprise and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Pamela Sebestyen's affirmative act of knowingly making her name and joint account status available as an instrument of the scheme — conduct that was essential to giving the counterfeit checks the facial legitimacy they required to

- 9 -
**COMPLAINT AND DEMAND FOR JURY TRIAL**

deceive Dr. Park — constitutes direct participation in conducting the enterprise's affairs, and is not the mere passive association of a spouse. Her conduct satisfies the operation or management standard and subjects her to liability under 18 U.S.C. § 1962(c).

42. **Racketeering Activity — Wire Fraud (18 U.S.C. § 1343).** As alleged in paragraphs 23 through 31 above, Defendants committed no fewer than ten (10) separate acts of wire fraud, each constituting a predicate act of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), by knowingly and intentionally transmitting or causing to be transmitted fraudulent wire communications in interstate and foreign commerce for the purpose of executing their scheme to defraud Dr. Park:

   a. First Predicate Act: November 17, 2025 — Fraudulent BMO wire confirmation, Serial No. 298461375, $600,000.00

   b. Second Predicate Act: November 21, 2025 — Fraudulent BMO wire confirmation, Serial No. 298475263, $653,000.00

   c. Third Predicate Act: November 21, 2025 — Fraudulent BMO wire confirmation, Serial No. 298485314, $600,000.00

   d. Fourth Predicate Act: November 25, 2025 — Fraudulent TD Bank wire confirmation, Serial No. 376364395, $55,000.00

   e. Fifth Predicate Act: December 1, 2025 — Counterfeit BMO Check No. 332, $653,000.00, forged "AUTH BY Y KIM," joint holders Nelson Yu and Pamela J. Sebestyen

   f. Sixth Predicate Act: December 1, 2025 — Counterfeit BMO Check No. 333, $600,000.00, forged "AUTH BY Y KIM," joint holders Nelson Yu and Pamela J. Sebestyen

   g. Seventh Predicate Act: December 16, 2025 — Fraudulent BMO wire confirmation by Randall W. Yu, Serial No. 298672687, $200,000.00

   h. Eighth Predicate Act: January 7, 2026 — Fraudulent Meridian Credit Union wire request, Reference No. 376150627, $910,000.00

   i. Ninth Predicate Act: Ongoing — False electronic and voice communications falsely representing that funds had cleared, that wires were being "rerouted," and that banking

**COMPLAINT AND DEMAND FOR JURY TRIAL**

confirmations were authentic, transmitted repeatedly via interstate and international wire communications throughout the duration of the scheme, including without limitation Nelson Yu's November 26, 2025 email to Yeseul Kim copied to Dr. Park, and his December 3, 2025 email promising bank drafts while providing his Social Insurance Number as purported good faith.

j.    Tenth Predicate Act: December 23, 2025 — Nelson Yu's email to Dr. Park transmitted via interstate and international wire, explicitly stating his intention to deliver bank drafts in Las Vegas on December 30 and 31, 2025, and expressly demanding that Dr. Park "hold off on any legal proceedings to any of the parties discussed" — a wire communication made in direct furtherance of the scheme's litigation-suppression purpose.

43. **Pattern of Racketeering Activity.** The ten predicate acts constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) for the following reasons:

a.    **Relatedness:** Each predicate act was committed in furtherance of the same fraudulent scheme, targeting the same victim (Dr. Park), using the same methods (fabricated banking instruments and false electronic communications transmitted from Canada to California), and serving the same purpose of inducing Dr. Park to delay legal action while Defendants retained his loan proceeds.

b.    **Continuity:** The predicate acts were committed repeatedly over a period of approximately three months (November 17, 2025 through January 7, 2026), with the overarching scheme of deception — including ongoing false promises, broken payment deadlines, and manufactured excuses — continuing through at least April 2026.

c.    **Multiple Participants and Institutions:** The pattern involved coordinated conduct across multiple defendants — Nelson Yu, Randall W. Yu, Pamela Sebestyen, DOE 1, and banking employees at two separate financial institutions (BMO and Meridian Credit Union) — demonstrating an organized, multi-actor scheme rather than isolated misconduct by a single individual.

d.    **Escalation and Threat of Continuity:** Nelson Yu's scheme escalated over time

- 11 -
**COMPLAINT AND DEMAND FOR JURY TRIAL**

— adding new institutions (TD Bank, then Meridian Credit Union), enlisting additional family members (Randall Yu, DOE 1), and continuing false promises and stalling tactics well into April 2026 — demonstrating a threat of continued racketeering activity absent judicial intervention.

44. **Causation and Injury.** As a direct and proximate result of Defendants' pattern of racketeering activity, Dr. Park has suffered injury to his business and property in an amount to be proven at trial, but no less than $1,255,010.00. Plaintiff is also entitled to recover treble his actual damages, together with costs of suit and reasonable attorney's fees.

<u>**SECOND CAUSE OF ACTION**</u>

**RICO Conspiracy — 18 U.S.C. § 1962(d)**

**(Against All Defendants)**

45. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

46. As alleged herein, Defendants Nelson Yu, Pamela Sebestyen, Randall W. Yu, Doe 1, and Does 2 through 100 knowingly agreed and conspired to violate 18 U.S.C. § 1962(c). Each Defendant knew of, agreed to, and took overt acts in furtherance of the fraudulent enterprise, specifically as follows:

a.   **Nelson Yu** orchestrated and directed the enterprise, personally transmitting or causing the transmission of fraudulent wire confirmations bearing Serial Nos. 298461375, 298475263, 298485314, and 376364395; counterfeit checks bearing Check Nos. 332 and 333 with forged authorization "AUTH BY Y KIM"; the Meridian Credit Union wire request bearing Reference No. 376150627; and repeated false electronic and voice communications — all transmitted to Dr. Park in Los Angeles, California.

b.   **Pamela Sebestyen** knowingly agreed to and facilitated the conspiracy by permitting her name to appear as joint account holder on counterfeit BMO Check Nos. 332 and 333, lending false legitimacy to the fabricated instruments transmitted to Dr. Park.

c.   **Randall W. Yu** knowingly agreed to and facilitated the conspiracy by personally fabricating and transmitting fraudulent BMO wire confirmation Serial No. 298672687 in his own name, purporting to evidence a $200,000.00 wire transfer that was never sent.

d.   **DOE 1** knowingly agreed to and participated in the conspiracy as a co-

**COMPLAINT AND DEMAND FOR JURY TRIAL**

conspirator assisting Nelson Yu in the scheme to defraud Dr. Park, the full scope of whose participation will be established through discovery.

e. **Does Yeseul Kim at BMO and DOES 2 through 100**, including an unnamed Meridian Credit Union employee, knowingly agreed to and facilitated the conspiracy by creating, authorizing, or transmitting fraudulent banking documentation — including wire confirmations bearing official serial numbers and counterfeit checks bearing forged authorizations — used in furtherance of the scheme to defraud Dr. Park. BMO and Meridian Credit Union as institutions are not named as defendants; however, their employees' conduct as described herein is alleged as part of the conspiracy.

47. As a direct and proximate result of Defendants' RICO conspiracy, Dr. Park has been injured in his business and property in an amount no less than $1,255,010 Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages, together with reasonable attorney's fees and costs of suit.

## THIRD CAUSE OF ACTION

### Intentional Fraud and Deceit (California Civil Code §§ 1709–1710)

### (Against Defendant Nelson Yu, Pamela Sebestyen, Randall W. Yu and DOES 2–100)

48. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

49. The elements of fraud, which give rise to the tort action for deceit, are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity, or scienter; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

50. Nelson Yu made numerous specific and materially false representations to Dr. Park, including the transmission of eight (8) fraudulent wire transfer confirmations and counterfeit bank checks between November 17, 2025 and January 7, 2026 — each bearing official bank logos, serial numbers, account numbers, routing information, and forged authorization codes — each falsely purporting to evidence payments that were never made.

51. Nelson Yu simultaneously engaged in a months-long pattern of false oral and written

**COMPLAINT AND DEMAND FOR JURY TRIAL**

promises, including repeated assurances that payment would be sent imminently, that his banker had confirmed funds were clearing, that wires were being rerouted, and that he would appear in person with bank drafts — all representations Nelson Yu knew to be false at the time they were made.

52. That Nelson Yu's representations were knowingly false is confirmed by his ultimate admission: "Wire won't be sent, do what you have to on your end."

53. Nelson Yu made these misrepresentations with knowledge of their falsity and with the specific intent to induce Dr. Park to refrain from pursuing his legal remedies while Nelson Yu and his co-conspirators retained the loan proceeds.

54. Dr. Park justifiably relied on the fraudulent wire confirmations and counterfeit check instruments — which were facially authentic banking documents — and on Nelson Yu's accompanying representations, in refraining from immediately initiating legal action.

55. Defendant Pamela Sebestyen made materially false representations to Dr. Park by knowingly permitting her name to appear as joint account holder on counterfeit BMO Check Nos. 332 and 333, both transmitted to Dr. Park on or around December 1, 2025. Her appearance on those checks as joint account holder was itself an affirmative false representation of material fact — specifically, that a legitimate joint bank account existed and that the checks were authentic instruments drawn thereon. Pamela Sebestyen knew this representation was false at the time the checks were transmitted, as no legitimate joint account underlied the counterfeit instruments. She made and permitted this misrepresentation with the intent to induce Dr. Park to believe that substantial funds were available and that repayment was forthcoming, thereby causing Dr. Park to refrain from taking immediate legal action. Dr. Park justifiably relied on the facial authenticity of the checks, including the joint account holder representation, in refraining from filing suit.

56. Defendant Randall W. Yu made a materially false representation to Dr. Park by personally fabricating and transmitting a fraudulent BMO wire transfer confirmation bearing Serial No. 298672687, on or around December 16, 2025, purporting to evidence a wire transfer of $200,000.00 in his own name. This document — bearing official BMO logos, serial numbers, and professional banking formatting — falsely represented to Dr. Park that Randall W. Yu had transmitted $200,000.00 in partial repayment of the outstanding debt, when no such wire was ever

- 14 -
**COMPLAINT AND DEMAND FOR JURY TRIAL**

sent and no funds were received. Randall W. Yu personally fabricated and transmitted this document with full knowledge of its falsity and with the specific intent to induce Dr. Park to believe that repayment was underway and to further refrain from pursuing legal action. Dr. Park justifiably relied on the facially authentic wire confirmation in continuing to refrain from initiating suit.

57.    As a direct and proximate result of Nelson Yu's, Pamela Sebestyen's, and Randall W. Yu's fraud, Dr. Park has suffered damages of no less than **$1,331,566.00**, plus continuing interest, attorney's fees, and costs. Each Defendant's conduct was intentional, malicious, and oppressive within the meaning of California Civil Code § 3294, justifying an award of punitive damages in an amount sufficient to punish and deter such conduct.

### FOURTH CAUSE OF ACTION

#### Promissory Fraud

#### (Against Defendant Nelson Yu and DOES 2–100)

58. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

59. Promissory fraud is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.

60. At the time Nelson Yu solicited and received each tranche of the loans from Dr. Park, he made express and implied promises to repay the funds with interest within a defined time. These promises were made without any intention to perform.

61. Nelson Yu's access to over $17.6 million in his Edward Jones investment account at all relevant times — more than sufficient to repay the entire debt — renders his total non-payment a deliberate choice and establishes that his promises of repayment were false from the inception of the lending relationship.

62. Dr. Park justifiably relied on Nelson Yu's promises of repayment in extending each successive tranche of the loans. Absent those promises, Dr. Park would not have loaned the funds.

63. As a direct and proximate result, Dr. Park has suffered damages of no less than

- 15 -

**COMPLAINT AND DEMAND FOR JURY TRIAL**

$1,255,010.00 together with interest, costs, and punitive damages pursuant to California Civil Code § 3294.

## FIFTH CAUSE OF ACTION

### Civil Conspiracy to Defraud

### (Against All Defendants)

64. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

65. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

66. The major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he or she was a direct actor and regardless of the degree of his or her activity.

67. Defendants Nelson Yu, Pamela Sebestyen, Randall W. Yu, DOE 1, and Does 2 through 100 entered into a common agreement and plan to defraud Dr. Park. In furtherance of that plan: Nelson Yu orchestrated and transmitted fraudulent banking documents bearing Serial Nos. 298461375, 298475263, 298485314, 376364395, and Reference No. 376150627, along with counterfeit Check Nos. 332 and 333; Pamela Sebestyen permitted her name to appear as joint account holder on Check Nos. 332 and 333; Randall W. Yu personally fabricated and transmitted fraudulent wire confirmation Serial No. 298672687 in his own name; DOE 1 assisted as a co-conspirator; and banking employee Does created and authorized fraudulent banking documentation used in the scheme.

68. Each act described herein was performed in knowing furtherance of the common plan, with the shared purpose of deceiving Dr. Park into refraining from legal action while Defendants retained the loan proceeds. As a direct and proximate result, Dr. Park has suffered damages of no less than $1,255,010, together with interest, costs, and punitive damages.

COMPLAINT AND DEMAND FOR JURY TRIAL

## SIXTH CAUSE OF ACTION

### Aiding and Abetting Fraud

### (Against Defendants Pamela Sebestyen, Randall W. Yu, DOE 1, and DOES 2–100)

69. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

70. As alleged herein, Nelson Yu committed intentional fraud against Dr. Park through the transmission often predicate acts of fraudulent wire communications and false representations over a period of months.

71. Defendants Pamela Sebestyen and Randall W. Yu each had actual knowledge of Nelson Yu's fraudulent scheme and provided substantial assistance in furtherance thereof. Pamela Sebestyen's name appears on counterfeit BMO Check Nos. 332 and 333 as a joint account holder, lending false authenticity to the fabricated instruments. Randall W. Yu personally fabricated and transmitted fraudulent BMO wire confirmation Serial No. 298672687 purporting to evidence a $200,000.00 wire transfer in his own name.

72. DOE 1, with actual knowledge of the fraudulent scheme, provided assistance to Nelson Yu as a co-conspirator, the full scope of whose participation will be established through discovery.

73. Defendant Yeseul Kim and Does 2 through 100, the unnamed Meridian Credit Union employee, rendered substantial assistance to Nelson Yu by creating, authorizing, or transmitting fraudulent wire confirmations and banking documents bearing official logos, serial numbers, and forged authorization codes, with actual knowledge that such assistance was furthering a scheme to defraud Dr. Park in Los Angeles, California.

74. As a direct and proximate result of Defendants' aiding and abetting, Dr. Park has suffered damages of no less than$1,255,010, together with interest, costs, and punitive damages.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment / Restitution

### (Against All Defendants)

75. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

76. Dr. Park conferred a direct financial benefit on Nelson Yu in the amount of $1,255,010,00 in loan proceeds. Nelson Yu received, retained, and utilized those funds for his own benefit and the benefit of his co-conspirators — including Pamela Sebestyen, who as his wife and joint holder of marital assets has directly benefited from the retention of Dr. Park's funds.

77. Nelson Yu made no payments on the loans. Under these circumstances, it would be unjust and inequitable to permit any Defendant to retain the benefit of Dr. Park's funds without full restitution.

78. Plaintiff is entitled to restitution of all funds unjustly retained by Defendants, in an amount to be proven at trial but no less than $1,255,010,00, together with interest from the date of each loan.

**EIGHTH CAUSE OF ACTION**

**Conversion**

**(Against All Defendants)**

79. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

80. Dr. Park transferred specific and identifiable sums totaling $1,255,010,00 to Nelson Yu under loan agreements providing for repayment. Nelson Yu's refusal to repay those sums — and his active concealment of the funds through a months-long scheme of fraudulent documentation and false assurances — constitutes wrongful dominion and control over Dr. Park's property in a manner inconsistent with Dr. Park's ownership and possessory rights. Defendant Pamela Sebestyen, as Nelson Yu's wife and joint holder of marital assets in which Dr. Park's loan proceeds have been commingled or retained, has exercised and continues to exercise wrongful dominion and control over Dr. Park's property. Defendant Randall W. Yu, by personally fabricating and transmitting a fraudulent wire confirmation in furtherance of the scheme, actively participated in concealing the conversion and in preventing Dr. Park from discovering and recovering his converted property. Defendant DOE 1 and Does 1 through 100, by assisting Nelson Yu and the co-conspirators through the creation, authorization, and transmission of fraudulent banking instruments, aided in the active concealment of the converted funds and the continued wrongful retention of Dr. Park's property — each acting with knowledge that Dr. Park's funds were being wrongfully withheld.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

81. Dr. Park has demanded return of his funds. Defendants have refused. As a direct and proximate result, Dr. Park has suffered damages in an amount to be proven at trial, but no less than 1,255,010,00, together with interest and punitive damages pursuant to California Civil Code § 3294.

**NINTH CAUSE OF ACTION**

**Violation of California Penal Code § 496(c)**

**(Against All Defendants)**

82. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

83. California Penal Code section 496 permits an injured party to recover treble damages and attorney's fees against any person who receives, conceals, or aids in receiving or concealing property that has been obtained in any manner constituting theft.

84. As alleged herein, Nelson Yu obtained Dr. Park's loan proceeds through intentional fraud and deceit — including the transmission of ten fraudulent wire communications and the fabrication of counterfeit banking instruments — constituting theft by false pretenses under California law.

Each co-conspirator — Pamela Sebestyen, Randall W. Yu, DOE 1, and  Yeseul Kim, and Does 2 through 100 — — received, retained, or aided in the receipt or concealment of the proceeds of that theft, within the meaning of Penal Code § 496.

85. Pursuant to Penal Code § 496(c), Plaintiff is entitled to treble actual damages, reasonable attorney's fees, and costs of suit against all Defendants.

**TENTH CAUSE OF ACTION**

**Unfair Business Practices — California Business & Professions Code § 17200**

**(Against All Defendants)**

86. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

87. Defendants' conduct as alleged herein — including fabricating nine fraudulent wire transfer confirmations and counterfeit banking instruments bearing official bank logos, serial numbers, and forged authorization codes; creating counterfeit checks listing a co-conspirator as joint account holder to lend legitimacy; transmitting false voice messages and electronic

- 19 -

**COMPLAINT AND DEMAND FOR JURY TRIAL**

communications falsely confirming fund clearance; and sustaining a months-long scheme of deception directed at a California resident — constitutes unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business & Professions Code § 17200.

88. As a direct result of Defendants' unlawful conduct, Dr. Park has suffered financial loss. Plaintiff seeks full restitution of all sums wrongfully obtained and retained by Defendants, and injunctive relief preventing Defendants from dissipating, transferring, or concealing assets pending resolution of this action.

## ELEVENTH CAUSE OF ACTION

### Breach of Contract

### (Against Defendant Nelson Yu and DOES 1–100)

### *(Pleaded in the Alternative)*

89. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39 above as though fully set forth herein. This cause of action is pleaded in the alternative to Plaintiff's fraud-based claims pursuant to Federal Rule of Civil Procedure 8(d)(2). To the extent any court determines that the loan agreements between Dr. Park and Nelson Yu constitute valid and enforceable contracts rather than agreements void or voidable for fraud, Dr. Park is entitled to recover the full amount owed thereunder as damages for breach.

90. The parties entered into valid and enforceable loan agreements, evidenced by the following:

a. *Written Instruments — The $600,000.00 Tranche:* On or around April or May 2025, Dr. Park and Nelson Yu executed five written instruments styled as "Giannis NT RPAs" (bills of sale), pursuant to which Dr. Park conveyed $600,000.00 in value to Nelson Yu in exchange for Nelson Yu's express obligation to repay those sums with interest.

b. *Wire Transfer Loan Agreements — The $600,000.00 and $55,010.00 Tranches:* Between approximately April 2025 and August 2025, Nelson Yu solicited and received from Dr. Park three wire transfers totaling $600,000.00 and additional wire transfers totaling $55,010.00, pursuant to express and implied agreements under which Nelson Yu agreed to repay all sums with interest within a defined time.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

c. *Written Acknowledgment and Reaffirmation:* On December 3, 2025, Nelson Yu reaffirmed and acknowledged his outstanding loan obligations in a written communication bearing the subject line "Promissory note," in which he expressly acknowledged the debt in the denominations of $653,000.00, $600,000.00, and $55,010.00, and promised to deliver bank drafts in full satisfaction thereof. This written acknowledgment constitutes a further contractual obligation and ratification of the underlying loan agreements.

91. Dr. Park fully performed all of his obligations under the loan agreements by disbursing the agreed loan proceeds in the full amounts and at the times requested by Nelson Yu.

92. Nelson Yu has materially breached the loan agreements by failing and refusing to repay any portion of the principal or interest owed, notwithstanding Dr. Park's full performance, his own written acknowledgments of the debt, and repeated demands for repayment.

93. As a direct and proximate result of Nelson Yu's breach, Dr. Park has suffered damages in an amount no less than $1,331,566.00, representing $1,255,010.00 in unpaid principal and $76,556.00 in accrued interest at 6.1% per annum through April 1, 2026, together with continuing interest and costs of suit.

93. As a direct and proximate result of Nelson Yu's breach, Dr. Park has suffered damages in an amount no less than $1,331,566.00, representing $1,255,010.00 in unpaid principal and $76,556.00 in accrued interest at 6.1% per annum through April 1, 2026, together with continuing interest and costs of suit.

### TWELFTH CAUSE OF ACTION

**Money Lent**

**(Against Defendant Nelson Yu and DOES 2 - 100)**

*(Pleaded in the Alternative)*

98. As a direct and proximate result, Dr. Park is entitled to recover no less than $1,255,010.00, together with continuing interest and costs of suit.

94. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39 above as though fully set forth herein. This cause of action is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

95. Between approximately April 2025 and August 2025, Dr. Park lent and advanced to

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Nelson Yu specific and identifiable sums $1,255,010.00, disbursed as follows: $600,000.00, including $200,000.00 transmitted at Nelson Yu's explicit direction to his associate Christian Nguyen in Orange County, California; $600,000.00 pursuant to five written instruments; and $55,010.00 in additional wire transfers.

96. Nelson Yu received and accepted each and every disbursement. By receiving and retaining those funds, Nelson Yu became legally obligated to repay the full amount lent to him, together with interest.

97. Nelson Yu has failed and refused to repay any portion of the money lent. Despite Dr. Park's repeated demands for repayment — including through formal written demand transmitted by counsel on February 11, 2026 — no payment of any kind, whether of principal or interest, has ever been made.

98. As a direct and proximate result, Dr. Park is entitled to recover no less than $1,331,566.00, representing unpaid principal of $1,255,010.00 and accrued interest of $76,556.00 through April 1, 2026, together with continuing interest and costs of suit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DAVID PARK, DDS respectfully prays for judgment against Defendants, and each of them, as follows:

**On the Federal RICO Claims (First and Second Causes of Action):**

1. For treble damages pursuant to 18 U.S.C. § 1964(c) in an amount equal to three times Plaintiff's actual damages, which are no less than $1,331,566.00, resulting in a trebled award of no less than $3,994,698.00;

2. For reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. § 1964(c);

On the First through Ninth, Eleventh, and Twelfth Causes of Action:

3. For compensatory damages in an amount to be proven at trial;

4. For prejudgment interest at the rate of ten percent (10%) per annum on all loaned sums from the date each loan was made, pursuant to California Civil Code § 3287(a);

5. For punitive and exemplary damages pursuant to California Civil Code § 3294 in an amount sufficient to punish Defendants' intentional, malicious, fraudulent, and oppressive conduct and to deter similar conduct;

6.  For treble damages pursuant to California Penal Code § 496(c);

7.  For restitution and disgorgement of all funds wrongfully obtained and retained by Defendants;

8.  For the imposition of a constructive trust over all funds and assets traceable to Dr. Park's loan proceeds in Defendants' possession, custody, or control;

9.  For a prejudgment writ of attachment against Defendants' assets, including without limitation Nelson Yu's Edward Jones investment account and all other financial accounts and assets of all Defendants;

10. For a temporary restraining order and preliminary injunction enjoining Defendants from transferring, dissipating, concealing, or encumbering any assets pending resolution of this action;

11. On the Eleventh Cause of Action (Breach of Contract) and Twelfth Cause of Action (Money Lent), pleaded in the alternative: For compensatory damages representing all unpaid principal and accrued interest in an amount no less than $1,331,566.00 together with continuing interest and costs of suit — sought in the alternative to, and not in addition to, the RICO treble damages sought under the First and Second Causes of Action;

12. For attorney's fees and costs to the extent permitted by law, including under California Penal Code § 496(c) and 18 U.S.C. § 1964(c); and

13. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff DAVID PARK, DDS hereby demands a trial by jury on all issues so triable.

**Dated:** April 27, 2026

**PARK LLP**

By: /s/ Daniel E. Park
Daniel E. Park, Esq.
Attorney for Plaintiff
 DAVID PARK, DDS

- 23 -
**COMPLAINT AND DEMAND FOR JURY TRIAL**